UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| SHERYL A. MONTOYA, | : | |
|---|---|---|
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-131 (JCH) |
| v. | : | |
| | : | |
| SPINELLA & ASSOCIATES, P.C.; | : | |
| CONNECTICUT HOME HEALTH | : | |
| SERVICES, LLC | : | SEPTEMBER 12, 2013 |
| Defendants | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 17)**

**I.     INTRODUCTION**

Plaintiff Sheryl A. Montoya ("Montoya") brings this action for unlawful collection procedures against defendants Spinella & Associates, P.C. ("Spinella") and Connecticut Home Health Services, LLC ("CHHS"). In her Complaint (Doc. No. 1), Montoya alleges violations of the Fair Debt Procedures Act ("FDCPA"), 15 U.S.C. §§1692 et seq.; violations of the Connecticut Creditor's Collection Practices Act, Conn. Gen. Stat. §36a-648 ("CCPA"); and violations of the Connecticut Unfair Trade Practices Act, §§42-110a et seq.

On May 14, 2013, CHHS filed this Motion to Dismiss (Doc. No. 17) as to Counts Two and Three of Montoya's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. On May 17, 2013, Montoya filed a Memorandum in Opposition (Doc. No. 20). On June 10, 2013, CHHS filed a Response (Doc. No. 30).

For the reasons set forth below, CHHS's Motion to Dismiss (Doc. No. 17) is denied.

1

## II. BACKGROUND

The instant dispute centers on the debt collection procedures initiated by CHHS, and continued by Spinella, to recover a debt allegedly owed by Montoya. On March 5, 2008 CHHS and Franklin Nott II ("Nott"), Montoya's father, entered into a Services Agreement for home caregiver services that CHHS would provide to Nott.

Starting on or around January 31, 2012, and subsequent to Nott's death, CHHS initiated debt collection procedures against Montoya. Spinella also undertook efforts to collect this debt and demanded payment of the debt from Montoya in a letter dated October 5, 2012. Defendant CHHS served a summons and complaint on Montoya on January 8, 2013, in order to collect the debt they claim Montoya owed them.

## III. DISCUSSION

Pursuant to Rule 12(b)(1), CHHS moves the court to dismiss the state court actions against CHHS for lack of subject matter jurisdiction. CHHS argues that the court should decline to exercise supplemental jurisdiction because Montoya's state law claims are not closely related to the federal claim. As explained below, pursuant to Rule 12(b)(1), the court determines that it has subject matter jurisdiction.

### A. Standard of Review

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the district court lacks the statutory or constitutional power to adjudicate the case. See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir.2008); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). On a 12(b)(1) motion, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Liranzo v. United States, 690 F.3d 78, 84 (2d Cir. 2012) (citing to Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir.2005).

Although the court must generally take as true all material facts alleged in the Complaint, in reviewing a Rule 12(b)(1) motion the court refrains from drawing inferences favorable to the plaintiff's assertion of jurisdiction. See APWU v. Potter, 343 F.3d 619, 623 (2d Cir.2003).

  B. <u>Supplemental Jurisdiction</u>

"Under 28 U.S.C. §1367(a) federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution." <u>Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.</u>, 373 F.3d 296, 308 (2d Cir. 2004) (citing to <u>Cicio v. Does</u>, 321 F.3d 83, 97 (2d Cir.2003) (internal quotations omitted). In order for the state law claims to form part of the same controversy, they have to "derive from a common nucleus of operative fact." Id. The Second Circuit has provided further guidance that a common nucleus of operative fact can exist "even if the state law claim is asserted against a party different from the one named in the federal claim." <u>Id</u>. Finally, the Second Circuit has instructed that, "[i]n determining whether two disputes arise form a common nucleus of operative fact, we have traditionally asked whether the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court." <u>Achtman v. Kirby, McInerney & Squire, LLP</u>, 464 F.3d 328, 335 (2d Cir. 2006) (citing to <u>Lyndonville Sav. Bank& Trust Co. v. Lussier</u>, 211 F.3d 697, 704 (2 Cir. 2000) (internal quotations omitted).

In the matter presently before this court, the state law claims are so closely related to the federal claim that they form the same controversy. All the claims in this case are based upon the common nucleus of the debt that CHHS, together with

Spinella, were trying to collect. Indeed, all of the relevant allegations in Montoya's Complaint—the only information available to the court at this early stage of litigation—indicate that the claims are based on the collection procedures employed by CHHS and Spinella. See Complaint, Doc No. 1.

The Second Circuit addressed a similar situation in <u>Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U.</u>, 605 F2d.1228 (2d Cir. 1979). There, the appellees brought action against the appellants in federal court alleging "violations of procedural and substantive rights under § 101 of the Act, 29 U.S.C. s 411, and seeking damages under pendent state tort claims." <u>Id</u>., at 1233. These actions arose from an "altercation between appellees and Dolgen . . . and a series of ensuing disciplinary proceedings against appellees conducted by Local 10 and the International." <u>Id</u>. The Second Circuit found a common nucleus of fact, indicating that "[a]lthough the federal claims arose primarily from the union disciplinary proceedings and the state claims from the confrontation in Dolgen's office on January 29, 1975, both were linked by the hostility of Union officials toward appellees' assertion of their § 101 rights." <u>Id</u>.

The instant case is similar to <u>Rosario</u>. The alleged actions of CHHS and Spinella were linked by their efforts to collect the same debt from Montoya. Taking Montoya's assertions as true, these actions appear to evince a "hostility", similar to the one that bound the claims together in <u>Rosario</u>. Id. As such, the underlying facts in this case form the type of common nucleus that is necessary for supplemental jurisdiction under section 1367(a).

4

Once a district court has determined that it has supplemental jurisdiction over the state law claims in the matter under section 1367(a), "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234 (2d Cir. 2011) (citing to Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998) (emphasis omitted). Subsection (c) of section 1367 provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2006).

None of the subsections of section 1367(c) suggest that this court should decline to exercise supplemental jurisdiction. Montoya's state law claims allege violations of the CCPA and CUTPA. Neither of these violations present novel issues of state law for purposes of subsection 1367(c)(1).

Subsection 1367(c)(2) allows a district court discretion to refuse supplemental jurisdiction if the state law claims "substantially predominate" over the federal claims before the court. See Shahriar, 659 F.3d at 246; see also Itar-Tass Russian News Agency, 140 F.3d at 448. Here, there is no indication that this will occur. Montoya alleges that both Spinella and CHHS attempted to collect the debt from her,

albeit in different ways. See Complaint (Doc. No. 1) at ¶ 7, 9. Montoya also alleged actions by both defendants in general, indicating that the actions of both CHHS and Spinella were involved in filing an action against her. Id. As such, it cannot be said that the state law claims against CHHS will predominate over the federal claim against Spinella, because "[p]redomination under section 1367 generally goes to the type of claim . . . ." Shahriar, 659 F.3d at 246, (quoting De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 311 (3d Cir. 2003). In the instant matter, the FDCPA is a similar type of claim to a claim under CCPA or CUTPA, and therefore the Montoya's state law claims will not substantially predominate over her federal claim.

Subsection 1367(c)(3) is not applicable here, because no claims have been dismissed in this matter. Finally, the court finds no "compelling reason" under section 1367(c)(4) to decline supplemental jurisdiction over Montoya's state law claims. The defendants in this matter have presented no evidence of any "compelling reason" for this court to decline supplemental jurisdiction and at this point in the proceedings, there is no indication that any "compelling reason" exists.

Therefore, having found that section 1367(a) provides a basis for supplemental jurisdiction as to the Montoya's state law claims, and finding no part of section 1367(c) applicable to this case, the court exercises supplemental jurisdiction over Montoya's state law claims.

## IV. CONCLUSION

For the reasons stated above, the court denies CHHS' Motion to Dismiss (Doc. No. 17).

albeit in different ways. See Complaint (Doc. No. 1) at ¶ 7, 9. Montoya also alleged actions by both defendants in general, indicating that the actions of both CHHS and Spinella were involved in filing an action against her. Id. As such, it cannot be said that the state law claims against CHHS will predominate over the federal claim against Spinella, because "[p]redomination under section 1367 generally goes to the type of claim . . . ." Shahriar, 659 F.3d at 246, (quoting De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 311 (3d Cir. 2003). In the instant matter, the FDCPA is a similar type of claim to a claim under CCPA or CUTPA, and therefore the Montoya's state law claims will not substantially predominate over her federal claim.

Subsection 1367(c)(3) is not applicable here, because no claims have been dismissed in this matter. Finally, the court finds no "compelling reason" under section 1367(c)(4) to decline supplemental jurisdiction over Montoya's state law claims. The defendants in this matter have presented no evidence of any "compelling reason" for this court to decline supplemental jurisdiction and at this point in the proceedings, there is no indication that any "compelling reason" exists.

Therefore, having found that section 1367(a) provides a basis for supplemental jurisdiction as to the Montoya's state law claims, and finding no part of section 1367(c) applicable to this case, the court exercises supplemental jurisdiction over Montoya's state law claims.

## IV. CONCLUSION

For the reasons stated above, the court denies CHHS' Motion to Dismiss (Doc. No. 17).

**SO ORDERED.**

Dated at New Haven, Connecticut this 12th day of September, 2013.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge